Filed 3/10/25  Land Bankers v. MRC Porto Marina CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| LAND BANKERS, LLC, | B330846 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV37661) |
| v. | |
| MRC PORTO MARINA, LLC, | |
| Defendant and Appellant. | |
| ANTHONY A. NGUYEN, et al., | B331029 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 21STCV41001) |
| v. | |
| MRC PORTO MARINA, LLC, | |
| Defendant and Appellant. | |

APPEALS from judgments of the Superior Court of Los Angeles County, Christopher Lui, Judge.  Affirmed.

Law Office of George Rikos and George D. Rikos; Williams Iagmin and Jon R. Williams for Defendant and Appellant MRC Porto Marina, LLC.

Sinclair Braun Kargher, Kevin S. Sinclair and Andrew H. Steinberg for Plaintiff and Respondent Land Bankers, LLC and Plaintiffs and Respondents Anthony A. Nguyen and Mai Nguyen.

––––––––––––––

The instant appeals involve quiet title actions as to two adjacent properties that were originally owned by the same developer.  Plaintiff Land Bankers, LLC (Land Bankers) and plaintiffs Anthony and Mai Nguyen (the Nguyens) (collectively, plaintiffs) filed quiet title actions against MRC Porto Marina, LLC (MRC), the entity that attempted to foreclose on both properties after MRC purportedly obtained a lien against the properties from one of the developer's creditors.  In their respective cases, plaintiffs moved for summary judgment, arguing that they were bona fide purchasers for value and MRC had no lien interests in the properties.  While the motions were pending, MRC requested continuances so that it could conduct additional discovery.  Pursuant to Code of Civil Procedure section 437c, subdivision (h),[1] the trial court gave MRC a single continuance in each case but denied MRC's additional request for continuance to depose a third-party witness.  The trial court then

_____

[1]     All subsequent statutory references are to the Code of Civil Procedure.

2

granted summary judgment for plaintiffs, concluding that they were bona fide purchasers for value, MRC had no interest in the properties, and MRC failed to articulate facts it expected to elicit from the third-party witness that were essential to its summary judgment opposition.

The sole issue on appeal is whether the trial court abused its discretion by not continuing the summary judgment hearings pursuant to section 437c, subdivision (h) so MRC could depose the third-party witness. We conclude that the trial court acted within its discretion because the testimony MRC sought was parol evidence that could not contradict the recorded chain of title. Accordingly, we affirm the judgments.

### FACTUAL AND PROCEDURAL BACKGROUND

### I.     2013 Deeds of Trust on the Property

In 2013, real estate developer Eli Cohen owned two adjacent lots of land in Pacific Palisades, California—17810 Porto Marina (the 17810 Property) and 17816 Porto Marina (the 17816 Property). To develop the lots, Cohen obtained three loans, secured by three deeds of trust that encumbered both properties:

(1) a $1.2 million loan made by Firooz Payan in June 2013;
(2) a $3.8 million loan made by Behrouz Aframian in July 2013; and
(3) a $400,000 loan made by Payan in November 2013.

### II.    2015 Subordination Agreement

In July of 2015, Aframian agreed to loan Cohen an additional $1.6 million, thus raising Cohen's indebtedness to Aframian to $5.4 million. The terms of Aframian's additional loan to Cohen were memorialized in two publicly recorded documents: (1) a "loan modification and extension agreement" executed by Aframian and Cohen and the "Subordination

3

Agreement" executed by Cohen, Payan, and Aframian. Only the Subordination Agreement is relevant to this appeal.

The Subordination Agreement stated that Cohen had repaid in full Payan's $1.2 million loan. Specifically, Recital D of the Subordination Agreement stated that Cohen was the borrower on "a loan in the original principal sum of $1,200,000 dated June 20, 2013, which was paid in full by Owner [Cohen] to Payan (which was secured by that certain Deed of Trust which shall be reconveyed by Payan concurrently with the execution hereof)."

The Subordination Agreement also modified the relative priorities of Aframian's $3.8 million deed of trust and Payan's remaining $400,000 deed of trust as against the titles to the two properties. Specifically, Payan agreed to release the $400,000 deed of trust as a lien against the 17816 Property. Aframian agreed to subordinate his $3.8 million deed of trust to Payan's $400,000 deed of trust as against the 17810 Property. The effect of the Subordination Agreement was to give Aframian the only lien against the 17816 Property, and to give Payan the senior lien (in the amount of $400,000) against the 17810 Property.

To give effect to the parties' agreement, Recital E of the Subordination Agreement stated that "[a]s a condition to executing and delivering the Partial Reconveyance, Payan requires that Payan's Deed of Trust be unconditionally and at all times remain a lien or charge upon the 17810 Property, prior and superior to all the rights of Lender [Aframian]. . . ."[2] The

---

[2] Recital D of the Subordination Agreement defined " 'Partial Reconveyance' " as the reconveyance of the $400,000 deed of trust to Cohen as against the 17816 Property, while preserving that

4

Subordination Agreement defined " 'Payan's Deed of Trust' " as the $400,000 deed of trust.  Thus, Recital E made clear that Payan's $400,000 deed of trust on the 17810 Property had priority over Aframian's deed of trust.[3]

Consistent with the terms of the Subordination Agreement, Payan recorded both a partial reconveyance of the $400,000 deed of trust as against the 17816 Property, and a full reconveyance of the $1.2 million deed of trust as against both properties.  All four of these instruments (the loan modification agreement, the Subordination Agreement, the partial reconveyance of the $400,000 deed of trust, and the full reconveyance of the $1.2 million deed of trust) were publicly recorded on July 17, 2015.

Subsequently, Payan assigned his remaining interest in the $400,000 deed of trust to a third party, who is not involved in this litigation.  The $400,000 deed of trust was paid off by Aframian and is not at issue on appeal.

## III.  Conveyance of the Properties to Land Bankers and the Nguyens

In June 2016, Cohen conveyed both properties to Aframian in full satisfaction of his debt to Aframian, which by then was $7,524,304.  At the same time Aframian recorded the deed

---

$400,000 lien against the 17810 Property.  The Subordination Agreement defined "Lender" as Aframian.

[3]     Both in its opposition to the summary judgment motion and in its reply brief on appeal, MRC has suggested Recital E indicated that Payan's $1.2 million deed of trust remained on the property.  We agree with the trial court that the plain language of this Subordination Agreement clarifies that "Payan's Deed of Trust" refers to the $400,000 deed of trust.

5

conveying the properties from Cohen to Aframian, he conveyed the properties to his LLC, Land Bankers.

In October 2016, Land Bankers sold the 17816 Property to the Nguyens for $3.5 million. Real estate broker Rita Benelian acted as Land Banker's listing agent and the Nguyens' buying agent. Land Bankers remains the owner of the 17810 Property.

## IV. Payan's Purported Assignment of His Interest in the $1.2 Million Deed of Trust to MRC in 2020

In 2018 and again in 2020, Payan purported to rescind his 2015 reconveyance of the $1.2 million deed of trust. In 2020 Payan was in litigation with Michael R. Cartwright, appellant MRC's principal. According to a July 21, 2020 settlement agreement between Payan and Cartwright (the Payan/Cartwright settlement), there were at least five lawsuits between Payan and Cartwright, one of which resulted in a $1,000,000 stipulated judgment against Payan for fraud. Pursuant to the Payan/Cartwright settlement, "Payan agree[d] to provide an assignment of the deed of trust for Porto Marina to the Cartwright Parties."

Following Payan's settlement with Cartwright, Payan assigned the $1.2 million deed of trust to MRC. In April 2021, MRC recorded a notice of default against the 17810 and 17816 Properties and initiated foreclosure proceedings.

## V. The Present Lawsuits

In the fall of 2021, Land Bankers and the Nguyens filed the present lawsuits against Payan[4] and MRC for quiet title, cancellation of instrument, and declaratory relief as to their

---

[4] Because Payan is not a party to this appeal, we do not address his participation in the trial court proceedings.

6

respective properties.  In each lawsuit, MRC filed a cross-complaint against Land Bankers, the Nguyens, and others, asserting causes of action for declaratory relief, cancellation of written instrument, quiet title, conversion, unjust enrichment, breach of contract, recission, intentional misrepresentation, and common counts for account stated and money lent.  MRC sought relief on the theory that it had an interest in Payan's June 2013 $1.2 million dollar deed of trust.

In April 2022, Land Bankers and the Nguyens obtained preliminary injunctions barring MRC from proceeding with a trustee's sale of the properties.

## VI.  Motions for Summary Judgment and for Continuances

**Motions for Summary Judgment.**  In July and September 2022, the Nguyens and Land Bankers moved for summary judgment on their complaints and MRC's cross-complaints.  Plaintiffs argued that they were bona fide purchasers because Payan had reconveyed the $1.2 million deed of trust, and plaintiffs had no notice of any adverse claim to the property.  They argued that MRC was bound by the Subordination Agreement and thus had no interest in the properties.

**Motions for Continuance in the Nguyen Action.**  In the Nguyen action, MRC applied ex parte three times to continue the Nguyens' pending motion for summary judgment.  The trial court denied MRC's August 2022 request due to MRC's lack of diligence in seeking discovery, and on September 2, 2022, reluctantly granted the second request while repeating its concerns about MRC's lack of diligence.  As to the third ex parte application for a continuance (filed in November 2022), which is

7

at issue on appeal, MRC sought additional time to depose real estate agent Benelian and other witnesses.[5] Defense counsel attested that Benelian was avoiding service and that her testimony was important because "Benelian, who was the realtor for Plaintiffs Anthony and Mai Nguyen, was provided a preliminary report . . . that showed that Payan's Deed of Trust for $1.2M was still clouding the title, which was a month prior to the sale to the Nguyens."

The trial court denied the third request for a continuance, stating: "In denying the first ex parte application, the Court noted that MRC [] failed to make an adequate showing of diligence to obtain discovery. After MRC [] provided additional information in a second ex parte application, the Court granted a continuance but noted that the Court had concerns about the diligence with which MRC has pursued discovery. (See September 2, 2022 minute order.) For this third ex parte application, the declaration in support of the request to continue the summary judgment motion does not establish the exercise of diligence within the two months since the last ex parte application. The Court cannot grant continuance after continuance when diligence in obtaining discovery is not shown and where it is speculative that some of the witnesses (such as Rita Benelian . . .) can be located within a reasonable time. The ex parte application is DENIED to the extent it seeks a continuance of the hearing date."

---

[5] As MRC's appeal is focused on Benelian and does not make arguments regarding the other witnesses on appeal, we do not discuss them.

8

**Motion for Continuance in the Land Bankers Action.**
In November 2022, MRC similarly applied ex parte to continue the hearing on Land Bankers's motion for summary judgment. The trial court granted the continuance and continued the hearing to February 2023.

**MRC's Oppositions.** On January 27, 2023, MRC filed its oppositions to the motions for summary judgment. MRC argued that the reconveyance was void because Payan never intended to provide a full reconveyance of his interests in the properties at the time the Subordination Agreement was executed. MRC urged that the evidence was disputed concerning whether the plaintiffs were bona fide purchasers. MRC argued that a preliminary title report informed plaintiffs that Payan's deed of trust "may have still clouded the title" to the properties.

MRC claimed that Benelian, the real estate agent for Land Bankers, Aframian, and the Nguyens, had knowledge of Payan's alleged continuing lien interests in the properties, and her knowledge could be imputed to plaintiffs. MRC argued that Benelian's knowledge of Payan's continuing interest in the properties was evidenced by her inclusion of Payan in sales decisions, pricing, and the rejection of offers and formation of counter-offers for the properties, and by an email from Benelian stating that the 17816 property had "property flaws" when discussing the sale to the Nguyens. MRC presented an email Payan sent to Aframian in which Payan vaguely indicated he had some continuing interest in the properties. MRC also contended that the Subordination Agreement indicated Payan had an existing interest in both properties because Recital E of the Subordination Agreement stated "that 'Payan's Deed of Trust be unconditionally and at all times remain a lien or charge.' "

9

MRC further argued pursuant to section 437c, subdivision (h), that the circumstances warranted another continuance of the court's ruling on the summary judgment motion so that it could conduct more discovery. MRC stated that Benelian had been evading service and that her testimony would support its assertion that plaintiffs had notice of Payan's continuing interest in the properties and thus were not bona fide purchasers for value. MRC specifically wanted Benelian to explain what "flaws" she was referring to in her email regarding the sale to the Nguyens. MRC's counsel attested that he had engaged multiple process servers who attempted to serve Benelian with a deposition subpoena at her home and place of employment, and that in one instance, Benelian threatened to call the police on the process server.

**Plaintiffs' Replies.** In reply, Land Bankers and the Nguyens argued that MRC failed to produce any evidence that they had actual or constructive notice of a *valid* interest in the land. They argued that no matter what Payan claimed he was still owed, he could not circumvent the legal effect of the recorded reconveyance. As to the continuance, they asserted that MRC had many months to prepare its reply and a continuance would be futile because plaintiffs never had notice of a valid lien on the properties.

## VII. Summary Judgments Quieting Title

In February 2023, the trial court heard oral argument on Land Bankers's and the Nguyens' motions for summary judgment and took the matters under submission. In March 2023, the trial court granted summary judgment in favor of Land Bankers and the Nguyens on both the complaints and cross-complaints. The court concluded the recorded documents demonstrated that

10

Payan's interests had been fully reconveyed, and "to the extent Payan claims his understanding or intention contradicts the language of the Subordination Agreement, it is barred by the parol evidence rule." The court explained, "whether or not the $1,200,000 was actually repaid only goes to whether Payan has a breach of contract claim against Cohen to recover damages. A distinction must be drawn between the deed of trust and the underlying debt. Although unusual, nothing prevents a deed of trust from being reconveyed even if the entire debt has not been paid." The court stated that Aframian was a bona fide purchaser for value because there was no evidence of any deed of trust of record as to the $1.2 million loan made by Payan when Aframian took title to both properties.

The court concluded that because Aframian was a bona fide purchaser, he conveyed his interest to Land Bankers free and clear of any prior unrecorded interest, and thus Land Bankers and the Nguyens took title free and clear of MRC's claimed interest. The court pointed out that MRC did "not cite any case law whereby a reconveyance of a Deed of Trust which was recorded can be rendered ineffectual because of some hidden intention that it not be effective despite recordation."

The court rejected MRC's position that Benelian's knowledge of Payan's alleged continuing interests in the properties was relevant to Aframian's bona fide purchaser status. The court found that MRC failed to show that it could discover facts essential to its opposition to justify a continuance.

In April 2023, the court entered judgments in favor of Land Bankers and the Nguyens. The court quieted title to the 17810 Property in Land Bankers and to the 17816 Property in the Nguyens. The court declared that Payan's recission of the

reconveyed $1.2 million deed of trust was null and void, and that MRC had no interest in the properties.

MRC appealed.

## DISCUSSION

MRC solely contends that the trial court had an obligation to continue or deny the motions for summary judgment pursuant to section 437c, subdivision (h) because MRC sought to depose Benelian in support of its opposition. As we explain below, the trial court did not abuse its discretion in determining that Benelian's deposition would yield, at most, inadmissible parol evidence, which could not contradict the recorded chain of title.

## I.     Legal Standards

Section 437c, subdivision (h) provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due." The statute requires a good faith showing by affidavit that a continuance is needed to obtain facts essential to justify opposition to the motion. (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 714 (*Lerma*).)

To satisfy this good faith requirement, an opposing party's declaration must demonstrate three elements: (1) the facts to be obtained are essential to opposing the motion, (2) there is reason to believe such facts may exist, and (3) the reasons why additional time is needed to obtain these facts. (*Lerma, supra,*

12

120 Cal.App.4th at p. 715.) "The party seeking the continuance must justify the need, by detailing both the particular essential facts that may exist and the specific reasons why they cannot then be presented." (*Id*. at p. 716.)

We review a trial court's ruling on a request for a continuance of a hearing on a summary judgment motion for an abuse of discretion. (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1038.) "Notwithstanding the court's discretion in addressing such continuance requests, 'the interests at stake are too high to sanction the denial of a continuance without good reason.' [Citation.] Thus, '[t]o mitigate summary judgment's harshness, the statute's drafters included a provision making continuances—which are normally a matter within the broad discretion of trial courts—virtually mandated " 'upon a good faith showing by affidavit that a continuance is needed to obtain facts essential to justify opposition to the motion.' " ' " (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 100–101.)

## II. Trial Court Acted Within its Discretion in Finding a Lack of Good Cause for a Continuance

We begin our analysis with the first prong—are there facts to be obtained that are essential to opposing the motion for summary judgment? Here, MRC argues that another continuance of the summary judgment motion hearing was warranted because defense counsel informed the court that he had not been able to depose Benelian, and MRC needed "Benelian's further testimony concerning what she knew and what she communicated to both Aframian and the Nguyens about Payan's interests in the properties." MRC contends that such testimony could have created a triable issue that Land Bankers and the Nguyens were not bona fide purchasers for value because

13

Benelian knew that Payan had an interest in the property. (See *Vasquez v. LBS Financial Credit Union* (2020) 52 Cal.App.5th 97, 108 (*Vasquez*) ["notice of an adverse interest may be imputed to a purchaser from knowledge acquired by her or his agent acting within the course and scope of the agent's authority"].) For the reasons that follow, we conclude that Benelian's knowledge was not relevant to plaintiffs' bona fide purchaser status.

Bona fide purchasers are buyers who "(1) purchase the property in good faith *for value*, and (2) have no knowledge or notice of the asserted rights of another" to the property. (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251.) "A bona fide purchaser without notice may seek a legal determination through a quiet title action that the title it obtained remains free and clear of any adverse interest in the property. (*Reiner v. Danial* (1989) 211 Cal.App.3d 682, 690.) 'The general rule places the burden of proof upon a person claiming bona fide purchaser status to present evidence that he or she acquired interest in the property without notice of the prior interest.' " (*Vasquez, supra*, 52 Cal.App.5th at p.107.)

"Constructive notice of a lien or other interest in property arises from the proper recording of that interest. ([*In re Marriage of*] *Cloney* [(2001)] 91 Cal.App.4th [429,] 437 ['Every duly recorded conveyance of real property, or recorded judgment affecting title to or possession of real property, is constructive notice of the contents thereof to subsequent purchasers and mortgagees from the time of recordation.']; *Hochstein* [*v. Romero* (1990)] 219 Cal.App.3d [447,] 452 ['the law conclusively presumes that a party acquiring property has notice of the contents of a properly recorded document affecting such property']; see Civ. Code, § 1213 [recorded conveyance of real property provides

14

constructive notice to subsequent purchasers].)  However, 'a bona fide purchaser of real property has constructive notice of only those matters that could be located by a diligent title search.' " (*Vasquez, supra*, 52 Cal.App.5th at p. 108.)

It is well established that "[t]he operation of a deed cannot be defeated by parol evidence of an intention on the part of the grantor that it should have an effect different from that apparent on its face."  (*Pinsky v. Sloat* (1955) 130 Cal.App.2d 579, 588 (*Pinsky*); *Schwen v. Kaye* (1984) 155 Cal.App.3d 949, 952 ["parol evidence is not admissible to add to, detract from or vary the terms of a deed"]; *Laux v. Freed* (1960) 53 Cal.2d 512, 523 ["One of such rules is that if the language of a deed is plain, certain and unambiguous, neither parol evidence nor surrounding facts and circumstances will be considered to add to, detract from, or vary its terms or to determine the estate conveyed."].)

"If the language of a deed is plain, certain and unambiguous, neither parol evidence nor surrounding facts and circumstances will be considered to add to, detract from, or vary its terms or to determine the estate conveyed.  [Citation.]  In the absence of mistake, fraud, or other matter affecting the validity of the instrument, and except where collateral matters are involved, a deed executed in consummation of an agreement between the parties merges all prior negotiations and agreements relating thereto; and, with the exceptions noted, the deed becomes the measure of the rights of the parties."  (*Palos Verdes Corp. v. Housing Authority of Los Angeles County* (1962) 202 Cal.App.2d 827, 836.)

"After a deed is delivered its operative effect as a conveyance cannot be impaired by any subsequent act or declaration of the grantor.  (*Rocha v. Rocha* [(1925)] 197 Cal. 396,

15

405; *Driscoll v. Driscoll* [(1904)] 143 Cal. 528, 536.) Where the language of a deed is plain, certain, and unambiguous, the surrounding facts and circumstances will not be considered. (*Riley v. North Star Mining Co.* [(1907)] 152 Cal. 549, 556; 26 C.J.S. 345, § 92.)" (*Pinsky*, *supra*, 130 Cal.App.2d at p. 588.)

These rules apply equally to a deed of trust, the instrument at issue in this case. (*Pinsky*, *supra*, 130 Cal.App.2d at p. 588 ["A deed of trust has the same effect as a deed from the trustor would have had"]; *Siegel v. American Savings & Loan Assn.* (1989) 210 Cal.App.3d 953, 957 ["A deed of trust is a three-party contract among the beneficiary-lender, the trustor-borrower, and the trustee. The trustee holds title to the property until the debt is repaid, at which time the title held by the trustee is reconveyed to the borrower."].) "Recordation of the deed of reconveyance extinguishes the lien on the property created by the deed of trust." (*Siegel*, at p. 957.)

Here, at the time of the 2016 conveyances, the recorded chain of title explicitly informed potential purchasers that Payan's $1.2 million deed of trust was no longer a lien on the property. The Subordination Agreement, signed by Payan stated that Cohen had repaid in full Payan's $1.2 million loan. Specifically, Recital D of the Subordination Agreement stated that Cohen was the borrower on "a loan in the original principal sum of $1,200,000 dated June 20, 2013, which was paid in full by Owner [Cohen] to Payan (which was secured by that certain Deed of Trust which shall be reconveyed by Payan concurrently with the execution hereof)." Consistent with the terms of the Subordination Agreement, Payan signed and recorded a full reconveyance of the $1.2 million deed of trust as against both properties. Both the Subordination Agreement and the full

16

reconveyance of the $1.2 million deed of trust were publicly recorded on July 17, 2015, well before plaintiffs took ownership of the properties in 2016.

Through these recorded documents, Payan represented to plaintiffs that the $1.2 million lien was no longer attached to the properties. Thus, at issue in denying the continuance was whether the court correctly concluded that Benelian's proposed testimony could not be used to contradict the plain language of the recorded reconveyance of the deed of trust and related documents.

We agree with the trial court that such parol evidence could not be used to contradict the reconveyance of the deed of trust. Even if MRC could elicit testimony from Benelian that Payan did not intend to divest himself of his secured interest in the $1.2 million loan, it is beside the point. Payan was bound by the unambiguous language of his recorded reconveyance of the deed of trust and cannot defeat operation of the reconveyance by parol evidence of his confidential intentions. Payan's recordation of the deed of reconveyance conclusively extinguished his lien on the properties. Notably, MRC altogether fails to address the parol evidence issue in its appellate briefing despite the trial court's decision discussing the effect of this rule.

Furthermore, MRC does not assert any applicable exception to the parol evidence rule. For instance, MRC does not contend that Payan signed the release and reconveyance instrument by accident or as a result of fraud. (See, e.g., *Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520, 530.) Nor does MRC contend that the instrument signed by Payan in 2015 to release and reconvey the $1.2 million deed of trust suffered from an ambiguity. (See *Baker v. Ramirez* (1987) 190 Cal.App.3d

17

1123, 1132 ["Although extrinsic evidence is not admissible to add to, detract from, or vary the terms of a deed [citation], it is admissible to determine the issue involved when an ambiguity appears on the face of the deed."].)

As the record reflects that MRC failed to make the requisite showing that there were facts to be obtained through additional discovery that were essential to opposing summary judgment (*Lerma, supra*, 120 Cal.App.4th at p. 715), the trial court did not abuse its discretion in denying MRC's request for a continuance pursuant to section 437c, subdivision (h).[6]

---

[6]     Because MRC failed to satisfy the first element required to demonstrate good faith in seeking a continuance under section 437c, subdivision (h), we need not address the remaining elements.

## DISPOSITION

The judgments are affirmed.  Plaintiff Land Bankers, LLC and plaintiffs Anthony and Mai Nguyen are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.

19